Andrew Portner, James Marion and Philip Montis, Trustees of Local Union, No. 100 of The Cigarmakers' International Union of America, Appellants, *v.* John S. Kirschner, D. J. Gallagher and P. J. McGuire.

*Principal and surety—Illegal contract—Embezzlement—Compounding felony.*

An embezzler is under a legal and moral obligation to repay the person whose money he has wrongfully appropriated to his own use, and it is, therefore, not against public policy nor unlawful for him to give security for its return at a future day.

The sureties on a bond given to secure the return of money embezzled by the principal in the bond, cannot allege that the bond was given for an illegal consideration where there is no evidence that criminal proceedings had been stifled, or that fraud or coercion had been practiced upon the principal and his sureties.

In an action upon such a bond it is not enough that the affidavit of defense alleges that the debt secured by the bond was for money embezzled; that the creditor accepted the bond in lieu of the money embezzled; and that the acceptance of the bond worked the release of the debtor "from all liability to prosecution for said crime of embezzlement." It must go further and allege the employment of criminal proceedings, or the threat to resort to them, as a means of coercion to compel the execution of the bond.

Argued, April 1, 1895.   Appeal, No. 158, Jan. T., 1895, by plaintiffs, from order of C. P. No. 3, Phila. Co., June T., 1894, No. 919, discharging rule for judgment for want of a sufficient affidavit of defense.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.   Reversed.

Assumpsit upon a bond.

The affidavit of defense of D. J. Gallagher, one of the sureties, was as follows:

" Affiant admits the execution by him of the bond on which suit is brought, on Feb. 19, 1891, and in which he, with P. J. Maguire, guaranteed the payment by one John S. Kirschner, to the obligees therein named, of the sum of nine hundred and seventy-seven dollars and eighty-five cents in three years and four months from the date hereof, in monthly payments of not less than twenty-five dollars each and every month, but avers by way of defense, that after the execution of said bond the condition and terms thereof were altered and changed by the obligees receiving and accepting from some person other than the obligors, or any of them, the sum of two hundred dollars on account thereof in one cash payment, and by not enforcing the obligation of the said John S. Kirschner to make monthly payments of twenty-five dollars each on account of the principal of said bond, as therein provided.

" Affiant is advised and believes, and so suggests to the court, that the above stated facts constitute such an alteration of the terms and conditions of said bond, after the delivery thereof, as relieves affiant of liability thereunder.

" Affiant further avers that the execution by him of said bond was entirely without consideration of any character to him, and that the only consideration to John S. Kirschner, the principal therein, was a consideration invalid in law in that it was given by him and accepted by the obligees for the purpose of compounding and settling a charge of embezzlement committed by said Kirschner while acting as financial secretary of Local Union No. 100 of the Cigarmakers' International Union of America, and after the execution thereof the said obligees in consideration thereof released the said Kirschner from all liability to prosecution for said crime of embezzlement.

" Affiant further avers by way of defense to said action that

the said plaintiffs herein named, viz., Andrew Portner, James Marion and Philip Montis, are not in fact trustees of Local Union No. 100 of Cigarmakers' International Union of America, and have no authority to act for said Local Union in bringing this suit, and have no interest whatever in said bond and would have no authority to receipt in payment therefor, or to satisfy a judgment obtained therein in this case, and the statement of claim is not signed or sworn to by them, or any of them ; the said Union is an unincorporated society, governed by officers other than the plaintiffs herein named, and affiant is advised, believes and hence suggests to the court that the said plaintiffs, having been removed from or succeeded in their offices as trustees of such Union, cannot maintain this suit, in their names, and that affiant cannot lawfully be called upon to defend an action brought on said bond, unless the same be brought by one having a property interest therein duly appearing of record in the suit."

The court discharged a rule for judgment for want of a sufficient affidavit of defense.    Plaintiffs appealed.

*Error assigned* was above order.

*William Gorman, John H. Campbell* with him, for appellants, cited : Phila. v. Reeves, 48 Pa. 472 ; Cope v. Smith, 8 S. & R. 110 ; Campbell v. Sherman, 151 Pa. 70 ; United States v. Simpson, 3 Penrose & Watt, 437 ; Farmers Bank v. Braden, 145 Pa. 473 ; Johnston v. Patterson, 114 Pa. 398 ; Rothermal v. Hughes, 134 Pa. 510 ; Geier v. Shade, 109 Pa. 180 ; Steinbacker v. Wilson, 1 Leg. Gaz. 76 ; Bredin's App., 92 Pa. 241 ; Etting v. Bank, U. S. 11 Wheat. 59 ; Long v. Laufman, 2 Rawle, 154 ; Magill v. Magill, 24 Pitts. L. J. 231.

*Frederick J. Lambert*, for appellees, cited : Pearce v. Wilson, 111 Pa. 14 ; Ormerod v. Dearman, 100 Pa. 561 ; Riddle v. Hall, 99 Pa. 116 ; Swope v. Ins. Co., 93 Pa. 251 ; Geier v. Shade, 109 Pa. 180 ; Rothermal v. Hughes, 134 Pa. 510 ; Bunting v. R. R., 81 Pa. 254.

OPINION BY MR. JUSTICE WILLIAMS, July 18, 1895 :

The facts of this case are clearly presented by the statement

and the affidavit of defense.  It appears that Kirschner was at one time financial secretary of Local Union No. 100 of the Cigar Makers' International Union.  He failed to pay over all the money that came into his hands as such officer, and on the nineteenth day of February, 1891, gave the bond in suit for the amount of his indebtedness.  The other defendants signed the bond as sureties for him.  The condition of the bond was for the payment by Kirschner of the amount of his indebtedness to Local Union No. 100 within three years and four months from its date at the rate of twenty-five dollars per month.

On the following day two hundred dollars were paid upon the bond.  This action is brought for the recovery of the remainder.  The affidavit of defense set up three reasons for resisting a recovery by the sureties.  First, that the payment of two hundred dollars upon the bond the day after it was given and before it became due worked such a change in the terms of the obligation as ought in equity to relieve the sureties.  Second, that the plaintiffs who have sued as trustees for Local Union No. 100 are not now in office, although they were when the bond was taken.  Third, that the bond was given in settlement for an embezzlement by Kirschner and is therefore invalid.  As the first and second of these are obviously without merit, we assume that the learned judge of the court below rested his ruling upon the third, and regarded it as setting forth a good and sufficient ground for a defense by the sureties of Kirschner.  Our question therefore is over the sufficiency of the affidavit of defense in so far as this averment is concerned.  The averment is that the bond was " invalid in law in that it was given by Kirschner and accepted by the obligors for the purpose of compounding and settling a charge of embezzlement . . . . and after the execution thereof the said obligors in consideration thereof released the said Kirschner from all liability to prosecution for said crime of embezzlement."  There is here no allegation that a criminal prosecution was ever begun or threatened, or that the execution of the bond was asked as the price of releasing Kirschner from liability, criminally, for his embezzlement.  What is set out is that the bond was given for the purpose of " settling a charge of embezzlement," and that after its execution and delivery " the said obligees in consideration thereof released the said Kirschner from all liability

to prosecution for said crime of embezzlement." Is this a statement of a fact, or of the inference of the affiant from the acceptance by the committee of Local Union No. 100 of the bond in lieu of the money due them? We are unable to tell from the examination of the affidavit what is meant by this averment. An embezzler is under an obligation legal and moral to repay the person whose money he has wrongfully appropriated to his own use that is, to say the least, no less than that which rests on an ordinary debtor. It is clearly his duty to pay back the money he has embezzled. If he cannot repay it at once it is his duty to do so as speedily as he can, and to secure such repayment in the best way he is able. It is not unlawful therefore for an embezzler who finds himself unable to return the money he has improperly used, at once, to give security for its return at such future day as the creditor is willing to accept. The debt is a good and valid consideration for the security given to the creditor. It is not against public policy for a thief to return the property stolen, or the value thereof, to the owner; but it is part of the sentence pronounced upon him by law upon his conviction. It is not against public policy for an embezzler to return the money he has embezzled to the owner thereof. On the contrary the law provides the injured party with civil remedies for the recovery of his money, and a criminal remedy for the punishment of the wrong done him. Public policy is contravened only when the injured party attempts to wrest the criminal proceedings, open to him, from their proper purpose, and make use of them as a means of coercing the defendant into the payment of money. When he prosecutes in the name of the commonwealth he must do so in good faith to the public, and he must not pervert the machinery of the criminal courts from its purpose, or use it as an engine of oppression for the purpose of extorting money from an impecunious or a reluctant debtor. It is not enough therefore that the affidavit alleges that the debt secured by the bond was for money embezzled, nor that the creditor accepted the bond in lieu of the money embezzled, nor that the acceptance of the bond worked the release of the debtor "from all liability to prosecution for said crime of embezzlement." It must go further and allege the employment of criminal proceedings, or the threat to resort to them, as a means of coercion

to compel the execution of the bond. In other words it must set out that the bond was executed under duress, and not for the purpose of settling or securing an honest debt due to an injured creditor. A threat to proceed criminally against the embezzler may not be enough to invalidate a security taken for the money due: Fulton v. Hood et al., 34 Pa. 365.

The bond was signed by the defendants. They undertake to show a reason why they are not bound by their own act in executing it. They must show either that it was given for an unlawful purpose, or that its execution was obtained by unlawful means. The return of the money embezzled by Kirschner was not an unlawful purpose. The agreement by his creditors to accept it in small monthly payments running over several years was not unlawful. The acceptance of the bond as a full equivalent for money that had been embezzled was not unlawful. It is not alleged that any criminal proceedings were instituted against Kirschner, or that any fraud or coercion was practiced upon the defendants. The public had no interest in the transaction which public policy could be invoked to protect, and the defendants were not imposed upon. They have therefore no claim to relief: Bredin's App., 92 Pa. 241. Riddle v. Hall, 99 Pa. 116, is urged on our attention as a case in point, but it does not so impress us. In that case a prosecution was pending against the son of Mrs. Riddle. Another was threatened against her husband. She was made to believe that if she gave the mortgage it would end both the pending and the threatened prosecutions. She gave it for that purpose. The bank took it with full knowledge. It discontinued the prosecution against the son, but soon after began a new one against both the husband and the son and pushed it to conviction and sentence. She then defended against the payment of her mortgage on the ground that it had been obtained from her by representations intended to mislead and deceive her. She asserted that she was induced to execute and deliver it to save her husband and her son from prosecution criminally by the bank, and that after obtaining it the bank did just what its officers had induced her to believe it would not do if the mortgage was given. In this case no prosecution was ever instituted or threatened so far as the affidavit informs us. There were no proceedings to discontinue at that time, and none have been entered upon at any time since. No fraud or

misrepresentation is alleged, no compounding of any criminal prosecution is set up. The affidavit of defense was therefore insufficient and the action of the court below erroneous.

It is now ordered that the order appealed from be reversed and the record remitted to the court below with directions to enter judgment against the defendant for such sum as to right and justice may belong, unless other legal or equitable cause be shown to the said court why such judgment should not be so entered.